HENRY McGEE

*v.*

MARY J. McGEE et al.

[Submitted February 3d, 1911. Decided February 21st, 1911.]

1. In determining whether money delivered by husband to wife was a gift or mere deposit, the intelligent intent of the parties controls if it can be ascertained.

2. An absolute gift by husband to wife can be established by presumptive evidence.

3. Evidence *held* to show that a husband placed money in his wife's hands as a deposit, and not as a gift.

---

On final hearing on bill, answer, replication and proofs.

*Messrs. Gaskill & Gaskill,* for the complainant.

*Messrs. Godfrey & Godfrey,* for Henry J. McGee, Jr., and Sarah May McGee.

*Mr. William J. Kraft,* for Samuel K. Robbins, guardian *ad litem* of Mary J. McGee, a lunatic.

LEAMING, V. C.

A great number and variety of adjudicated cases exist in this state in which a husband or father has sought to recover real or personal property the legal title to which has passed from him to a member of his family without a valuable consideration to support the transfer. If time would permit a classification of these cases into the several groups to which they belong, I am convinced that confusion, which is sometimes thought to exist, would be dissipated. In *Post* v. *Hagan,* 71 *N. J. Eq.* (*1 Buch.*) *234,* Mr. Justice Garrison ably points out the force which should be given to a single element which may exist in one class of cases and

not in another almost similar class. If, in a conveyance from a father to a son or from a husband to a wife through an intermediary, the elements of improvidence and undue influence be removed, as in *Fretz* v. *Roth,* 7*0 N. J. Eq.* (*4 Robb.*) *764,* another class of cases is presented. But in all the adjudicated cases it will be found that the single element of intent is the paramount inquiry. The intent may be presumed and the presumption may, ordinarily, be rebutted. Even the rule requiring independent advice is measurably based upon the presumption that a donor in that class of cases cannot reasonably be assumed to have intended the extreme consequence of his act. *Post* v. *Hagan, supra.* If, therefore, the intelligent intention of the parties can be accurately and satisfactorily ascertained, either through presumptions or other competent means, effect will be given to the intention.

In the present case the properties in question were not conveyed by the husband to the wife; neither were the properties purchased by the husband and the title by him placed in the name of the wife. Considerations peculiarly applicable to those classes of cases may therefore be eliminated. The properties here in question were purchased by the wife with money in her possession and deeds were made to her in her own name. This circumstance necessitates the inquiry whether the money with which the wife purchased the properties in question was her own or was the money of her husband.

The evidence in this case clearly discloses that the money with which the properties were purchased was money which the husband had earned in his business and had from time to time turned over to his wife. The wife is now the owner of certain other real estate, in her own right which she has inherited from her mother; but the evidence discloses that the mother died about the time or shortly after the time the properties in question were purchased, and prior to that time the wife had no income of her own from any source. If this money so earned by the husband was by him intentionally and intelligently turned over to his wife as a gift to her, the bill must be dismissed; if, on the other hand, it was clearly the intention of the husband and wife that she should be made simply a depository of the husband's earnings and that the

money should remain the property of the husband to the same extent as though he had kept it, it necessarily follows that the mere act of placing the money in her hands for safe-keeping was inoperative to vest in her any proprietary rights.

The evidence discloses that during the entire married lives of these parties prior to the transaction now in question, the husband had been prosperous in business and had madé a large amount of money as a saloon-keeper. At one time he simultaneously operated as many as four saloons. His wife shared none of the labors of his business, and at no time conducted any business of her own. The surplus money accumulating from day to day at the husband's saloon or saloons was carried by him to his home and handed to his wife and by her deposited in banks in her own name. From circumstances of this nature, unaccompanied by satisfactory extrinsic evidence of intent, various presumptions may arise. The presumption of an absolute gift may arise and may prevail, if not satisfactorily rebutted. In *Beck* v. *Beck* (*Court of Chancery*), 77 *N. J. Eq.* (7 *Buch.*) 51, the husband and wife were both money makers and the wife handled and commingled all earnings of both as a common fund; under the circumstances present in that case, an intention was ascertained upon the part of the husband and wife to accumulate a joint hoard which should belong to the survivor; and real estate purchased by the wife in her own name from the joint hoard was adjudged to be vested in the husband and wife by an estate equivalent to an estate by entirety.

But in the present case there has been no joint hoard. All of the money in question was earned by the husband and by him placed in the hands of his wife, and I am unable to find any circumstance connected with the habits or training or station in life of the parties which lead me to the conclusion that the principles defined in *Beck* v. *Beck, supra,* can be properly applied in this case. On the other hand, the evidence to my mind clearly and satisfactorily establishes the fact that the money of the husband was placed in the hands of his wife as a mere depository and solely as a matter of convenience and without any intention or purpose on his part to relinquish dominion or control over it, and that the wife received the money with the same

understanding and purpose. The purchase of the real estate by the wife was, no doubt, with the husband's knowledge and consent; but I am entirely satisfied that in that purchase there was no intent upon the part of either to diminish the rights of the husband as those rights were then understood by both parties.

It is unnecessary to here review the testimony which I hold sufficient to fully rebut the presumption of gift which may exist. The testimony clearly discloses that the wife repeatedly stated that the money belonged to her husband and that the property belonged to him; that she habitually referred to the money as her husband's money, and to the property as her husband's property; that she has stated that the money was handed to her by her husband because he was too busy to look after it, and that she took care of it because he hadn't time to do so. The real estate agent from whom the property was purchased testified that she told him that the money with which she was purchasing the property was her husband's money, and she took the receipt for the first payment in his name, but later had the deed made in her own name. The only witness whose testimony in any degree indicated that the wife might have had a beneficial interest in the money or in the property purchased with it, was that of the son Harry, who is making a defence to the suit; but two witnesses whose veracity I am unable to doubt have testified that Harry told them when the suit was about to be brought that he knew that the money with which the property was bought belonged to his father, and that he had heard his mother say that the property belonged to his father, and that she simply had the title in her own name for him.

It is my conclusion that the presumption of gift arising from the possession of the consideration money by the wife and from title taken in her name are fully overcome by the evidence.

I will accordingly advise a decree pursuant to the prayer of the bill.